United States District Court
Southern District of Texas
**ENTERED**
July 13, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| C&A Truck Brokerage, Inc., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-25-3420 |
| | § | |
| National Fresh Express, Inc., | § | |
| *Defendant.* | § | |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

Pending before the court is Plaintiff's Motion for Partial Summary Judgment. ECF No. 18. The court has considered the parties' briefing, the evidence, and the applicable law. For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment, ECF No. 18, is **GRANTED**.

### 1. Background and Procedural History

In December 2024, C&A Truck Brokerage, Inc. (C&A) and National Fresh Express, Inc. (NFE) entered into a Broker–Carrier Agreement (Agreement). ECF No. 18-2. Pursuant to the Agreement, C&A was to broker shipments for NFE, which would "undertake all reasonable efforts to transport and deliver all shipments in good condition, with reasonable dispatch, and in accord with any special requirements of shipper . . . ." *Id.* ¶ 3(A). For each shipment that NFE received under the Agreement, NFE was required to issue a bill of lading, in compliance with federal law. *Id.* ¶ 3(B)(i).

At issue in this case is an April 2025 shipment of temperature-sensitive strawberries, brokered under the terms of the Agreement. Guzman Aff., ECF No. 18-1, ¶ 4. The strawberries were loaded onto NFE's truck in California. ECF No. 19 at 3. As it was required to do under the Agreement, NFE signed a bill of

lading for the shipment (the Bill of Lading). ECF No. 18-7. The Bill of Lading includes information about the shipment, including the quantity of strawberries being shipped, the parties involved in the shipment, and the start and end time of loading. *Id.* It also includes information pertaining to the temperature of the shipment. *Id.* In bold text, the Bill of Lading states:

> **Temperature range to be maintained:  32°F to 34°F**
> **Reefer Temp/Run Setting:  32°F Continuous.**[1]

*Id.* Two days later, when NFE attempted to deliver the shipment, the strawberries were rejected due to elevated temperature. ECF No. 18 ¶ 10 (citing Guzman Aff. ¶ 6).

C&A paid the customer $44,967.90 as consideration for release from the customer's "claims, demands, causes of action, damages, and expenses" arising from the shipment of damaged strawberries.  ECF No. 18-4. Sometime later, C&A and NFE determined that the strawberries' elevated temperature was caused by NFE's failure to run the reefer at a continuous temperature setting. ECF No. 18 ¶ 1; Reefer Download Data, ECF No. 18-5.

C&A sued NFE in June 2025, seeking to recover the $44,967.90 that it had paid to the customer for the spoiled shipment of strawberries. ECF No. 1-1. C&A brought a claim for breach of contract as well as a claim under the Carmack Amendment,  49 U.S.C. § 14706. *Id.*  C&A now seeks summary judgment on its breach of contract claim. ECF No. 18.

NFE admits that it failed to run the reefer at the continuous temperature setting throughout transport. Def.'s Resps. to Pl.'s First Reqs. for Admis., ECF No. 18-8 at 3–4; ECF No. 19. However,

---

[1] According to the Affidavit of C&A's Office Manager, "'Reefer' is an abbreviated name and industry term for the refrigeration unit on the trailer. The continuous setting is a setting on the reefer that keeps the temperature at a more consistent temperature, compared to the alternative cycle-sentry setting." Guzman Aff. ¶ 4.

NFE argues that it is not liable for breach of contract because the contract terms that it breached are ambiguous. ECF No. 19 ¶ 1. Specifically, NFE argues that the court should not grant summary judgment because there is as a question as to whether the Bill of Lading's temperature instructions are part of the parties' Agreement. ECF No. 19 at 1, 4.

### 2. *The Terms of the Agreement*

Under the parties' Agreement, NFE promised to transport property "subject to the terms of th[e] Agreement and the Customer's requirements." ECF No. 18-2 ¶ 1(B). NFE agreed "to transport and deliver all shipments in good condition . . . and in accord with any special requirements of shipper, or as otherwise agreed in writing." *Id.* ¶ 3(A).

The Agreement contains a section titled "Bills of Lading," which provides that NFE "shall issue a bill of lading" for the freight that it transports pursuant to the Agreement. ECF No. 18-2 ¶ 3(B)(i). It states that once NFE takes possession of a shipment of freight, it "become[s] fully responsible/liable for the freight . . . ." *Id.* Additionally, the Agreement provides that any bill of lading "shall serve only as a receipt for the goods," and that "no other provision of a Bill of Lading's terms and conditions shall apply . . . **provided however that the Bill of Lading may also contain instructions or specifications of the Shipper** or Consignor pertaining to the transportation of goods covered by the Bill of Lading[,] **which [NFE] agrees to follow or perform by issuing its Bill of Lading**." *Id.* ¶ 3(B)(ii)) (emphasis added).

In a section pertaining to "[p]erishables, food products, and produce," the Agreement also provides that NFE "shall comply with all of [C&A's] and Shipper's instructions as to temperature and transportation requirements, including, but not limited to continuous temperature setting." ECF No 18-2¶ 3(L)(i). It states

that "[i]n the event [NFE] fails to comply with the terms of the Section and the cargo is lost, damaged, or otherwise rejected for any reason, [NFE] shall be liable for the full value of the load." *Id.*

The Agreement also contains a merger clause. ECF No. 18-2 ¶ 4(K) (stating that the Agreement represents the "entire understanding" between the parties). The merger clause bars the introduction of extrinsic evidence "to reform" the Agreement, and states that "[i]f there is any discrepancy or conflict between th[e] Agreement and any terms contained in any other document(s) . . . , the provision [in the Agreement] shall control . . . ." *Id.*

### 3. *Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357

4

(5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

### 4. Breach of Contract

Under Texas law, the elements of a breach of contract claim are (1) "the existence of a valid contract," (2) "performance or tendered performance by the plaintiff," (3) "breach of the contract by the defendant," and (4) "damages sustained [by the plaintiff] as a result of the breach." *Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga.*, 892 F.3d 719, 731 (5th Cir. 2018) (citation omitted).

It is undisputed that NFE and C&A entered into the Agreement. It is also undisputed that C&A performed under the Agreement. It brokered the strawberry shipment for NFE. Additionally, it is undisputed that NFE's admitted failure to run the reefer at a continuous setting led to the purchaser's rejection of the shipment, and that C&A suffered damages as a result. Therefore, only the first and third elements—the validity of the contract, and whether NFE breached the contract—are at issue.

The parties dispute the scope of the Agreement. Specifically, they disagree about whether the Bill of Lading's instruction to run the reefer at a continuous setting was incorporated by reference into the Agreement. NFE asserts that under the Agreement, it is not sufficiently clear whether NFE sought to bind itself to any bills of lading. ECF No. 19 at 5, 7. C&A, on the other hand, argues that the terms of the Agreement demonstrate the parties' express intent to referentially incorporate instructions from bills of lading, including the reefer-setting instruction at issue here. ECF No. 20 at 1–2. Because the reefer-setting instruction is thus a term of the Agreement, C&A argues, NFE's admitted failure to adhere to that instruction constitutes a breach of the Agreement. *Id.* at 2, 6.

When presented with a question of contract interpretation, the court looks first to the language of the parties' agreement. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). "A contract's plain language controls, not 'what one side or the other alleges they intended to say but did not.'" *Maxey v. Maxey*, 617 S.W.3d 207, 219 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017)).

Terms that are incorporated by reference into a contract generally become part of that contract. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). An incorporation by reference is "valid so long as it is 'clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'" *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.,* 648 F.3d 258, 268 (5th Cir. 2011) (quoting 11 Williston on Contracts § 30:25). Under Texas law, even an unsigned document may be incorporated by reference "provided [that] the document signed by the defendant plainly refers to another writing." *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968). To incorporate a document by reference, "the specific language used is not important," but the "language in the signed

document must show the parties intended for the other document to become part of the agreement." *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020) (quoting *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.)).

The plain terms of the Agreement show that NFE intended to bind itself to the Bill of Lading's instructions. The Agreement specifically provides that NFE was required to issue a bill of lading for each shipment of freight transported under the Agreement. ECF No. 18-2 ¶ 3(B)(i). By issuing a bill of lading, "[NFE] agree[d] to follow or perform" the Shipper's "instructions or specifications" contained therein. *Id.* ¶ 3(B)(ii). For produce shipments, NFE specifically agreed that it would be bound by all "instructions as to temperature and transportation requirements," including those pertaining to "continuous temperature setting . . . ." *Id.* ¶ 3(L)(i). It agreed that if it failed to follow the instructions, and such failure led to the cargo being "lost, damaged, or otherwise rejected for any reason," it would be "liable for the full value of the load." *Id.*

Under the terms of the Agreement, NFE knew that it may be required to follow a shipper or customer's instructions for temperature and transportation, and that those instructions may be provided for in a bill of lading. The terms of the Agreement also demonstrate NFE's clear intent to be bound by those instructions.

NFE argues that the Agreement is ambiguous because the Agreement's merger clause creates an inherent conflict with the attempt to incorporate other terms or documents by reference. ECF No. 19 at 2, 5–6. It argues that such an inherent conflict produces "at least two competing interpretations[,]" rendering the Agreement ambiguous. *Id.* at 5.

A contract is ambiguous when its meaning is uncertain, doubtful, or subject to more than one reasonable interpretation. *In re Davenport*, 522 S.W.3d 452, 456 (Tex. 2017) (citing *Coker v.*

*Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). The question of "[w]hether a contract is ambiguous is a matter of law for the court" to decide. *Id.* (citation omitted). If the court determines that there is no ambiguity, the contract "will be enforced as written." *Id.* at 457. The mere presence of a merger clause does not preclude the incorporation by reference of other documents. *Galban v. Inst. for Int'l Educ. of Students,* No. 22- 4917, 2024 WL 3950216, at *7 (N.D. Ill. Aug. 26, 2024) (citing *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995)) ("Notwithstanding the presence of a merger clause, language elsewhere in a contract may show an express intention to incorporate by reference.").

The plain language of the Agreement is not ambiguous. It is not subject to two reasonable interpretations, as NFE asserts. Despite the merger clause, there is no question that the parties' expressly intended to incorporate the Bill of Lading's instructions into the Agreement. While the merger clause overrides any terms or conditions "contained in any other documents" that conflict with those in the Agreement, the Bill of Lading's reefer-setting instructions are not in conflict with the terms of the Agreement. Additionally, while NFE argues that the reefer-setting requirement was not a material term, it is clear that it was. The carrier's responsibility to avoid any loss or damage and deliver shipments in good condition is contemplated throughout the Agreement. *E.g.*, ECF No. 18-2 ¶ 3(A) ("Carrier agrees that all motor vehicles . . . .shall be in good and suitable operating condition so as to avoid any loss of or damage to product . . . [and] that it will undertake all reasonable efforts to transport all shipments in good condition . . . ."). The entire strawberry shipment was rejected due to NFE's admitted failure to run the reefer at a continuous temperature setting.

NFE was bound by the terms of the Agreement, including the Bill of Lading's instruction to maintain a continuous reefer-setting. NFE admits that it failed to run the reefer at a continuous temperature setting during the strawberry shipment. NFE breached a material term of the parties' Agreement. Accordingly, NFE is liable for breach of contract.

### 5. Conclusion

Plaintiff's Motion for Partial Summary Judgment, ECF No. 18, is **GRANTED**.

Signed at Houston, Texas, on July 13, 2026.

_____
Peter Bray
United States Magistrate Judge

9